

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| TERRELL ROBERSON, ) | |
| ) | |
| Petitioner, ) | |
| v. ) | Criminal No. 1:10CR00060 |
| ) | Civil Action No. 1:12CV01467 |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION**

This case is before the Court on Terrell Roberson's ("Petitioner") Motion to Vacate, Set Aside or Correct His Sentence pursuant to Title 28, U.S.C. Section 2255.

During a ten-day crime spree in late 2009, the Petitioner committed a series of armed carjackings, ultimately seizing four vehicles at gunpoint from four different owners. At the time of his arrest, the Petitioner was found in the last of the four stolen cars. On March 18, 2010, a federal grand jury returned an eight-count indictment against the Petitioner for carjacking (in violation of 18 U.S.C. § 2119), using a firearm in a crime of violence (in violation of 18 U.S.C. § 924(c)(1)), and transportation of stolen vehicles (in violation of 18 U.S.C. § 2312).

1

At trial, the Government presented evidence linking all four carjackings to a single spree. For example, during the recovery of the fourth stolen car (the one with the Petitioner found inside), law enforcement found keys, a cellular telephone, and a purse taken from the victim of the third carjacking. Similarly, the first car was left at the scene of the second carjacking, and the third car was recovered near the scene of the fourth carjacking. A necklace bearing the Petitioner's nickname ("Rel") was also found in the second car after its recovery.

Apart from the physical evidence described above, different eye witnesses testified at trial that they observed the Petitioner driving two of the four stolen vehicles. One witness testified that she saw the Petitioner driving the second stolen car, a 2010 Toyota Corolla sedan, around the Birchwood neighborhood in Oxon Hill, Maryland. Law enforcement officers testified that the Petitioner was arrested in Virginia while driving the fourth stolen vehicle, a Chrysler 300 sedan, shortly after the final carjacking.

In addition, a minor present during the carjackings, B.S., testified that the Petitioner had committed all four carjackings and robberies. B.S., who was romantically involved with the Petitioner at the time of the crimes, testified that the Petitioner traveled from Oxon Hill to Virginia out of fear that

the cars stolen from Maryland would be traced by Maryland police. B.S. also testified that the Petitioner committed each carjacking with the aid of a handgun, which B.S. knew to be real after watching him fire it in the woods. B.S. also identified the necklace recovered from the second stolen vehicle as one she had given the Petitioner.

On June 15, 2010, a jury found the Petitioner guilty of all eight counts, and on September 10, 2010, the Petitioner was sentenced to a total of 444 months' imprisonment. The Petitioner's appeal of his conviction was denied by the Fourth Circuit on September 14, 2011, a decision that became final on October 6, 2011. United States v. Roberson, 446 F. App'x 622 (4th Cir. 2011). The Petitioner did not file for a writ of certiorari.

A prisoner in federal custody who has exhausted his direct appeal may attack his sentence on four limited grounds: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the sentences; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. Petitioners are typically barred from litigating non-constitutional claims that were not raised on direct appeals, United States v. Pettiford, 612 F.3d 270, 280 (4th Cir. 2010),

and from re-litigating claims the merits of which were raised and decided on direct appeal. United States v. Linder, 561 F.3d 339, 343 (4th Cir. 2009) (Motz, J., dissenting); see also United States v. Molen, 43 F.3d 1469 (4th Cir. 1994) (table).

In this collateral appeal, the Petitioner alleges, in one form or another, that he received constitutionally ineffective legal representation. Claims of ineffective assistance of counsel are evaluated by the rigorous two-pronged test established in Strickland v. Washington. 466 U.S. 668, 687-88 (1984); see also Hill v. Lockhart, 474 U.S. 52 (1985) (extending the Strickland test to claims of ineffective assistance of counsel in the context of plea bargaining). The Fourth Circuit has labeled the two prongs of the Strickland test as the "performance prong" and the "prejudice prong." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Strickland, 466 U.S. at 700.

Strickland's first prong addresses a counsel's professional competence. To meet this standard, a defendant must demonstrate that, in light of all the circumstances as they appeared at the time of the conduct, "counsel's representations fell below an objective standard of reasonableness," as established by "prevailing professional norms." Strickland, 466 U.S. at 687-88.

There is a "strong presumption" that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689-90; United States v. Terry, 366 F.3d 312, 316-18 (4th Cir. 2004), cert. denied, 543 U.S. 983 (2004); Matthews v. Evatt, 105 F.3d 907, 919 (4th Cir. 1997), cert. denied, 522 U.S. 833 (1997). For a defendant to overcome this presumption, "the analysis of counsel's performance typically must be comprehensive; i.e., not narrowly limited to a review of counsel's failings." See Strickland, 466 U.S. at 689. The Supreme Court has cautioned that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." Id. The Court noted in particular that the reasonableness of a counsel's actions often depends on "informed strategic choices made by the defendant and on information supplied by the defendant." Id. at 691.

To satisfy the second prong of the Strickland test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Assessing prejudice "requires the court deciding the ineffectiveness claim to 'consider the totality of the evidence before the judge or jury.'" Elmore v. Ozmint, 661 F.3d 783, 858 (4th Cir. 2011) (quoting Strickland, 466 U.S. at

5

695). Given that "[t]he defendant bears the burden of proving Strickland prejudice," if a defendant fails to meet this burden, "a reviewing court need not consider the performance prong." See Strickland, 466 U.S. at 697; Terry, 366 F.3d at 315; Fields, 956 F.2d at 1297; Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983).

The Petitioner first claims that he "provided counsel" with "witnesses" who would have undermined the credibility of the Government's witness, B.S., but that his counsel "refused to conduct any interviews and/or investigations" into the helpfulness of these witnesses. According to the Petitioner, had counsel interviewed these "witnesses," the jury "would have heard evidence that Petitioner was not present during the carjackings, that [B.S.] was covering for and protecting the person actually responsible, and that she was committing perjury to get back at Petitioner."

While the Petitioner claims to have proposed "witnesses" to his counsel, he only identifies one name in his Motion—that of Dante Washington, the Petitioner's brother. The Petitioner submits that these unnamed witnesses would have provided him with an alibi, but he offers no specifics about where he and these witnesses were during the time of the four carjackings. As to Washington, the Petitioner offers no affidavit from him, no details about his possible testimony, and no explanation about

Washington's basis of knowledge for such testimony. "[A]iry generalities, conclusory assertions and hearsay statements do not suffice to stave off summary judgment or entitle a habeas petitioner to an evidentiary hearing, because none of these would be admissible evidence at an evidentiary hearing." United States v. Roane, 378 F.3d 382, 400-401 (4th Cir. 2004) (internal quotation marks and alterations omitted). The record also shows defense counsel was quite aware of Dante Washington and specifically referred to him in closing. At trial, B.S. was asked about Washington's relationship to the Petitioner and Washington's presence near the stolen vehicles. The trial record therefore undermines the Petitioner's claim that his defense counsel was unaware of Washington; the decision not to call the Petitioner's brother was a strategic one, carrying a strong presumption of reasonableness. Strickland, 466 U.S. at 689.

The Petitioner also claims to have offered his counsel evidence that B.S. was "covering for and protecting the person actually responsible," and that he and B.S. had previously argued about this person. The Petitioner, however, never identifies this person, nor does he provide any details. Such "conclusory allegations are insufficient to establish the requisite prejudice under Strickland." United States v. Terry, 366 F.3d 312, 316 (4th Cir. 2004); see also United States v. Murray, No. 5:08-cv-80028, 2008 WL 4179320, at *6 (W.D. Va.

7

Sept. 10, 2008) (noting "generalized allegations and conclusory statements . . . without specific evidentiary support, are insufficient to establish that counsel . . . provided ineffective assistance in any way").

The Petitioner argues that trial counsel was constitutionally deficient for failing to call witnesses who would have "discredited" B.S. As before, the Petitioner has not identified a single actual person whom defense counsel should have called to testify. Such conclusory claims about hypothetical witnesses provide no grounds for relief. See Roane, 378 F.3d at 400. Moreover, defense counsel called multiple witnesses who challenged B.S.'s credibility. Defense counsel called Audrey M. Dodd, the grandmother of B.S., who testified that B.S. was a "chronic liar." Defense counsel also called Roderick Ramsey, who testified that B.S. was a gang member, and Clayton Moore, who testified that B.S. was untruthful. Finally, defense counsel called Davina Richardson, a social worker who was assigned to B.S.'s case, in an attempt to elicit clinical evaluations of B.S. In total, defense counsel offered four witnesses that challenged the credibility of B.S. and her truthfulness. The Petitioner now "cannot establish ineffective assistance of counsel under Strickland v. Washington on the general claim that additional witnesses should have been

called." Bassette v. Thompson, 915 F.2d 932, 941 (4th Cir. 1990).

The Petitioner also claims that counsel "fail[ed] to allow Petitioner to testify although Petitioner expressed his desire to do so, and fail[ed] to inform Petitioner that the decision whether to testify belonged solely to the Petitioner." Defense counsel has the obligation to inform a client that he has the right to testify. Rock v. Arkansas, 483 U.S. 44, 49-53 (1987). However, "[t]o waive the right [to testify], all the defendant needs to know is that a right to testify exists." United States v. McMeans, 927 F.2d 162, 163 (4th Cir. 1991). In this case, the Petitioner was explicitly informed by this Court of his right to testify and waived that right after being informed of that right:

> THE COURT: Mr. Roberson, I'd advise you, of course, you have the right to remain silent and not to testify, but you also have the right to testify. And if you desire to do so, you may take the stand and testify in this case. And I want you to know that you are aware that you have the right to either remain silent or you have the right to get on the stand and testify as to whatever you want to in this case.
>
> THE PETITIONER: Yes, sir, I understand that. I'm going to assert my Fifth Amendment.
>
> THE COURT: All right. And your desire is not to testify here?
>
> THE PETITIONER: Yes, sir.

THE COURT: All right. Thank you.

Even if defense counsel had failed to properly inform the Petitioner of his right to testify, the Court's instruction and colloquy with the Petitioner ensured that there was no prejudice in this matter and cured any supposed deficiency by counsel. Baires v. United States, 707 F. Supp. 2d 656, 666 (E.D. Va. 2010) (noting similar notification by district court "cured any hypothetical failure by counsel to inform [defendant] of his right to testify").

The Petitioner next argues that counsel ineffectively "fail[ed] to move for a mistrial and/or new trial based on juror b[ia]s due to one of the jurors knowing and working in the same building as one of the victims." During trial, one juror communicated to the Court that she recognized a government witness, Habteselassie Mered, from the Patent and Trademark Office, where Mr. Mered is employed.

The Sixth Amendment right to jury trial "guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." Irvin v. Dowd, 366 U.S. 717, 722 (1961). However, a juror is presumed impartial, and a preconception is insufficient to rebut the presumption if the juror can "lay aside his impression or opinion and render a verdict based on the evidence presented in court." Poynter v. Ratcliff, 874 F.2d 219, 222 (4th Cir. 1989) (finding no error in refusing to strike

for cause a juror who was the defendant's patient and a juror who was a defendant in a similar suit). In this case, there was no evidence that the juror's recognition of the witness affected or compromised her ability to render an impartial verdict. As this Court rightfully noted, in "[s]ome places in the country when you try a case, everybody knows everybody." Such simple recognition of a government witness does not render a juror unable to render a fair and impartial verdict. See, e.g., United States v. Meredith, 92 F.3d 1183, 1996 WL 452587, at *1 (4th Cir. Aug. 12, 1996) (table) (finding no error for failing to remove a juror for cause who previously worked with a government witness); see also Wyatt v. Bruce, 116 F. App'x 232, 234 (10th Cir. 2004) (unpublished) (finding no error where "juror personally knew one of the prosecution witnesses" from an unrelated class). Because there was no bias or due process violation, defense counsel reasonably and rightfully did not challenge the verdict on this ground.

The Petitioner also claims that defense counsel was ineffective for "fail[ing] to argue that the evidence, the government's closing arguments, and the jury instructions constituted a constructive amendment of the indictment" and for "fail[ing] to argue that the supplemental jury instructions misstated the law and constructively amended the indictment."

"When the government, through its presentation of evidence or its argument, or the district court, through its instructions to the jury, or both, broadens the bases for conviction beyond those charged in the indictment, a constructive amendment—sometimes referred to as a fatal variance—occurs." United States v. Malloy, 568 F.3d 166, 178 (4th Cir. 2009). "However, not every difference between the government's proof and the indictment constitutes a fatal variance. When the government's proof diverges to some degree from the indictment but does not change the crime charged in the indictment, a mere variance occurs." United States v. Allmendinger, 706 F.3d 330, 339 (4th Cir. 2013) (internal citation omitted).

The test for whether any variance is fatal is whether "the indictment is altered to change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment." United States v. Randall, 171 F.3d 195, 203 (4th Cir. 1999). In this case, no evidence, argument, or instruction diverged from the allegations found within the indictment. The indictment charges that the Petitioner took two vehicles by force and intimidation with intent to cause serious bodily harm (Counts 1 and 2), carried and used a firearm during these two carjacking offenses (Counts 3 and 4), and unlawfully transported four vehicles in interstate commerce between Virginia and Maryland (Counts 5 through 8).

Similarly, the jury instructions provided were standard instructions regarding the nature of the offenses, the elements of the charges, typical definitions of "firearm" and "crime of violence," and instructions on deliberation. No alternative theory of a crime arose in the Government's case-in-chief, in its closing, or in this Court's instructions to the jury. The Petitioner does not point to any specific instruction, argument, or piece of evidence in support of his constructive amendment claim, and consequently his conclusory allegations provide him no ground for relief. Terry, 366 F.3d at 316. Moreover, since the Petitioner was "convicted of the same crime charged by the grand jury," his "allegations of ineffective assistance in regard to constructive amendment of the indictment are meritless." United States v. King, 11 F. App'x 219, 220 (4th Cir. 2001).

The Petitioner argues that defense counsel was ineffective for "fail[ing] to request and properly argue for a specific and required jury instruction for informants and their testimonies." At the end of trial, the Petitioner's counsel requested two instructions regarding B.S.: one concerning the testimony of immunized witnesses, and a second "instruction having to do with a witness who committed perjury." Ultimately, this Court instructed the jury on the need to examine the testimony of accomplices with extra care, as well as the need to scrutinize

those testifying pursuant to a grant of immunity. This Court concluded that an instruction regarding testimony of a perjurer was unnecessary because B.S. had not been convicted of perjury. On appeal, defense counsel raised these jury instructions as grounds for reversible error. The Fourth Circuit affirmed the conviction, finding no error in the given instructions:

> Next, Roberson asserts that the district court abused its discretion when it refused to give his proffered jury instructions. . . . [W]e have reviewed both the proffered jury instructions and the district court's charge to the jury in the context of the entire trial. We conclude that the substance of Roberson's proffered instructions was adequately covered by the district court's charge to the jury. Finally, our review of the record establishes that the district court's refusal to charge the jury with the exact text of Roberson's proffered instructions did not impair Roberson's ability to meaningfully mount his defense, as he thoroughly cross-examined the witness who admitted lying before the grand jury, called impeachment witnesses, and presented a zealous closing argument attacking the witness's credibility.

Roberson, 446 F. App'x at 622-23. Because there was no error in the given jury instructions and because defense counsel pursued this line of appeal, the Petitioner cannot receive relief.

Roberson also argues that counsel was deficient for failing to "argue that with [B.S.'s] admission of perjury, the evidence was insufficient as a matter of law to sustain the verdicts." At trial, however, defense counsel moved to strike B.S.'s testimony

14

based on the witness's grant of immunity and prior false statements. Subsequently, the defense proposed "more cautionary" instructions regarding the testimony of B.S. given her admission to prior perjury. Both the motion and the proposed instructions were rejected by this Court. After the Petitioner's conviction, defense counsel appealed this Court's decision not to strike B.S.'s testimony on the grounds of inherent incredibility. The Fourth Circuit affirmed the ruling of this Court not to exclude the testimony of B.S.:

> Roberson argues that the district court abused its discretion when it denied his motion to strike a witness's testimony on the ground that the witness was inherently incredible in light of her prior false statements to the grand jury. Because it is not the function of the district court to sit as a gatekeeper and to shield the jury from evidence of questionable veracity, the district court properly submitted the issue of the witness's credibility to the jury. See United States v. Wilson, 484 F.3d 267, 283 (4th Cir. 2007). Thus, we conclude that the district court did not abuse its discretion in denying Roberson's motion to strike.

Roberson, 446 F. App'x at 622. For the reasons identified by this Court and the Fourth Circuit, the testimony of B.S. raised questions of fact that were rightfully submitted to the jury for consideration. With regard to defense counsel's actions on this subject, counsel's motion to strike the testimony of B.S. was functionally the same as a motion to acquit based on the

15

witness's admission of prior perjury. Therefore, the Petitioner neither received constitutionally deficient counsel on this subject nor was he prejudiced in any way.

Finally, the Petitioner alleges that defense counsel provided ineffective assistance with regard to the plea negotiations in this case. Specifically, the Petitioner claims that had he received better counsel, "his sentence would be 15 years instead of 37 years." In reality, defense counsel engaged vigorously on behalf of the Petitioner and offered wise counsel about the ramifications of any plea deal. Prior to trial, the Government and defense counsel exchanged multiple communications regarding possible parameters for a guilty plea. In April 2012, Assistant U.S. Attorney Michael E. Rich told defense counsel that the Government would consider a plea agreement in which the Petitioner pled guilty to one count of violating 18 U.S.C. § 924(c) and one count of violating 18 U.S.C. § 2119, as well as admitted to all criminal conduct in the Eastern District of Virginia. The Government's communication, however, emphasized that this plea would only cover conduct in Virginia and would entail "no agreement as to the disposition of PGC [Prince George's County] or DMD [District of Maryland] offenses."

The Petitioner does not allege another plea offer, and he acknowledges that he was apprised of this plea offer by his counsel. Contra Missouri v. Frye, 132 S. Ct. 1399 (2012)(finding

16

ineffective assistance of counsel where defense counsel failed to communicate plea offer to defendant). While discussing the plea offer, defense counsel correctly advised the Petitioner that the offered deal was not a "global plea" agreement and that, if the Petitioner accepted the plea offer, he still faced the possibility of being charged in Maryland for crimes involving the two carjacking offenses conducted in Oxon Hill. The Petitioner claims he declined the extended plea offer based on this advice from counsel.

According to the Petitioner, the advice he received was ineffective because "there is no evidence that Maryland was going to prosecute the Petitioner." The Petitioner alleges that he should have been "properly informed that it was unlikely Maryland would prosecute," and that, had he been so informed, he would have taken the plea offer. This speculation about other jurisdictions' prosecutorial choices is unfounded, and such conjecture is not a proper basis to rebut the "strong presumption" that defense counsel's strategic decisions and assessments were reasonable. Strickland, 466 U.S. at 689-90. Moreover, the Petitioner's speculation defies common sense; if the Petitioner had admitted that he committed two of four related violent crimes, the case against him in Maryland would have grown significantly stronger, increasing the chances of him being prosecuted by either state or federal authorities in

Maryland. Defense counsel was aware of the potential collateral consequences of pleading guilty in this case and advised the Petitioner of these possibilities. Such instruction is clearly advisable. Cf. Padilla v.Kentucky, 130 S. Ct. 1473, 1486 (2012)(holding Sixth Amendment requires "that counsel must inform her client whether his plea carries a risk of deportation").

Moreover, defense counsel's representation during plea negotiations was not simply limited to advising the client of a pending plea offer from the Government; instead, defense counsel on multiple occasions attempted to secure a "global plea" for the Petitioner. These efforts culminated in a five-page letter to the federal prosecutors, proposing the Government accept a deal where the Petitioner would plead guilty to "a single count of armed carjacking and the corresponding 18 U.S.C. § 924(c) charge, in the context of a plea agreement which dismisses all other pending charges and provides for global resolution (in state and federal courts in Virginia and Maryland)." Letter from Todd M. Richman to Michael E. Rich & Kathleen M. Kahoe (June 7, 2010), at 1. This letter shows diligence by defense counsel, combined with a well-informed understanding of the full consequences that would arise from pleading guilty to some, but not all, of the criminal conduct involved in this spree. Such legal assistance is constitutionally reasonable.

"Evidentiary hearings on 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" Moreno-Morales v. United States, 334 F.3d 140, 145 (1st Cir. 2003) (quoting United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir. 1978))(internal citations omitted)). The record demonstrates that an evidentiary hearing in this case would be an unnecessary waste of judicial and litigation resources. The Petitioner has failed to make any colorable claim of ineffective assistance of counsel. Despite his continued protestations, he has also failed to present any trustworthy evidence that he is in fact innocent of the crimes for which he was convicted. The trial transcript, trial records, and related documents conclusively show that the prisoner is not entitled to relief.

For the foregoing reasons, the Petitioner's Motion should be denied.

An appropriate Order shall issue.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
June 17, 2013
19